**DISCOVER FINANCIAL SERVICES, DFS Services, LLC, and Discover Bank, Plaintiffs,**

v.

**VISA U.S.A. INC., Visa International Service Association, Mastercard Incorporated, and Mastercard International Incorporated, Defendants.**

No. 04–CV–7844 (BSJ)(DFE).

United States District Court, S.D. New York.

Oct. 14, 2008.

Colin Ryle Kass, Michael Scott Becker, Patrick Maxwell Bryan, Kirkland & Ellis LLP, Washington, DC, Matthew L. Cantor, Jeffrey I. Shinder, Lloyd Edward Constantine, Constantine Cannon PC, Jennifer M. Hooper, Laura Beth Kadetsky, Robert Samuel Cohen, Kirkland & Ellis LLP, New York, NY, William Harlow Pratt, Andrew George Horne, Kirkland and Ellis LLP, Palo Alto, CA, for Plaintiffs.

Anthony D. Boccanfuso, Robert C. Mason, Susan G. Lee, Arnold & Porter, LLP, Joseph Nicholas Froehlich, Lord, Bissell & Brook, LLP, Gary Richard Carney, Julia Tarver Mason, Kenneth Anthony Gallo, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Kevin James Arquit, Arman Y. Oruc, Simpson Thacher & Bartlett LLP, Martin S. Hyman, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY, Ajay Bhanji Kundaria, Matthias Andreas Kamber, Paula Lenore Blizzard, Asim M. Bhansali, Keker & Van Nest, LLP, San Francisco, CA, Erum Zehra Mirza, George Freeman Langendorf, Joseph Michael Catoe, Mona Luddy Benach, Patricia Lynn Stasco, Susan Booth Cassidy, Arnold & Porter LLP, Washington, DC, Mona M. Stone, A. Kelly Turner, Lord Bissell & Brook LLP, Chicago, IL, for Defendants.

## MEMORANDUM and ORDER

BARBARA S. JONES, District Judge.

Defendants Visa U.S.A. Inc. and Visa International Service Association ("Visa"), and MasterCard Incorporated and MasterCard International Incorporated ("MasterCard") move this Court to preclude certain of Plaintiffs' Discover Financial Services,

DFS Services, LLC, and Discover Bank ("Discover") expert opinion testimony on the ground that these experts have not offered a reliable basis upon which to opine that Discover's failure to use third-party acquirers was caused by the issuing restrictions as opposed to unchallenged, lawful conduct. For the reasons that follow, Defendants' motion is DENIED. This Memorandum and Order also considers the following motions *in limine:* (1) MasterCard's motion to preclude evidence that any MasterCard member, between June 1996 and October 2004, was unwilling to do third-party acquiring for Discover due to the CPP's issuance ban; (2) MasterCard's motion to preclude evidence referencing its voluntary repeal of the acquiring prohibition component of the CPP; and (3) MasterCard's motion to preclude Discover from calling its General Counsel Noah Hanft as a witness at trial. For the reasons that follow, MasterCard's motions *in limine* are DENIED.

## DISCUSSION

### I. Standard of Review

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the wit-

ness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702.

The Rule 702 standard incorporates the principles enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in which the Supreme Court held that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), in which the Supreme Court held that *Daubert's* general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."

### II. Defendants' objections

The crux of Defendants' challenge with respect to Dr. Jerry Hausman is that he improperly relies upon lawful conduct, including MasterCard's acquiring ban, and thus "disproves causation by *ruling in* alternative causes that fully explain Discover's decision not to use third-party acquirers." Defs. Mem. Supp. Mot. Exclude Expert Opinion Test. ("Defs.Mem.") at 10. Defendants also assert that Dr. Hausman offers no reliable link between the issuing restrictions and Discover's decision not to approach third-party acquirers in the 1990s. *Id.* For the reasons that follow, both arguments fail.[1]

### A. Alternative Lawful Causes

 It is well established that in order to succeed, an antitrust plaintiff must

---

1. Defendants additionally challenge the expert opinion testimony of Michael McCormack as being irrelevant and unreliable. Because McCormack is a rebuttal expert witness, the Court reserves judgment on the admissibility of his testimony. Discover is directed not to address the disputed portions of McCormack's testimony in its opening remarks.

adhere to common law principles of causation. *See Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 109–10, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986); *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 537 n. 33, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). To prove causation, an antitrust plaintiff must demonstrate that the unlawful conduct at issue, here, the issuing prohibitions of Bylaw 2.10(e) and the CPP, "substantially contributed to its injury, even though other factors may also have contributed significantly." Leonard B. Sand, et *al.,* 4 Modern Federal Jury Instructions (Civil) ¶ 79–24. In this regard, Discover may introduce evidence— in the form of both expert opinion testimony and otherwise—to show that the issuing bans caused Discover harm by preventing it from engaging in third-party acquiring.[2] Nevertheless, Discover still bears the burden of establishing by a preponderance of the evidence that its proffered expert testimony meets the requirements of Federal Rule of Evidence 702, as interpreted by *Daubert. See United States v. Williams,* 506 F.3d 151, 160 (2d Cir.2007).

■ As an initial matter, Defendants do not appear to dispute the relevance of Dr. Hausman's testimony. Indeed, his report corresponds to the issues in this case and can be useful to Discover in making out its antitrust claims. Thus, there is no reason to exclude Dr. Hausman's opinion on the ground of relevance.[3] It must next be determined whether Dr. Hausman's testimony is reliable, that is, whether it is more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786.

Defendants contend that Dr. Hausman's methodology in constructing his damages model is unreliable given that alternative causes can fully explain Discover's decision not to use third-party acquirers. In support, Defendants point to Dr. Hausman's own statement that " '[b]ecause virtually all acquirers in the United States acquired for both Visa and MasterCard during the relevant time frame, the CPP was a complete bar against third-party acquiring' beginning in 1996." Defs. Mem. at 9 (quoting Hausman Report ¶ 188). According to Defendants, this statement demonstrates that other lawful conduct—not challenged in the present case—was alone sufficient to prevent Discover from using third-party acquirers. Defs. Mem. at 1. As a result, Discover should be precluded from proffering Dr. Hausman's testimony to establish this alleged causal link. *Id.*

In response, Discover submits that, as a matter of law, it is enough to establish that Defendants' allegedly unlawful conduct substantially contributed to Discover's inability to engage in third-party acquiring. Discover's Mem. Opp'n Defs. Mem. ("Discover's Mem.") at 1. The Court agrees with Discover and, for the reasons set forth below, finds that Dr. Hausman's opinion is admissible.

■ In order to recover damages in an antitrust action, a plaintiff

> must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause. Plaintiff is not required to prove that defendant's alleged antitrust violation was the sole cause of its injury;

---

**2.** Because Discover must prove that its alleged injury was caused in substantial part by the issuance bans, MasterCard's motion *in limine* to preclude any evidence that any MasterCard member, between June 1996 and October 2004, was unwilling to do third-party acquiring for Discover due to the CPP's issuance ban is DENIED.

**3.** Similarly, there is no basis in the record to challenge the qualifications of Dr. Hausman. Dr. Hausman is qualified as an expert witness in the field of economics given his extensive credentials, including his education, experience and general knowledge of the subject matter. *See McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995).

nor need plaintiff eliminate all other possible causes of injury. It is enough if plaintiff has proved that the alleged antitrust violation was a material cause of its injury. However, if ... that plaintiff's injury was caused primarily by something other than the alleged antitrust violation, ... that plaintiff has failed to prove that it is entitled to recover damages from defendant.

ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* (2005) at F–3. *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Litton Systems v. AT&T*, 700 F.2d 785, 828 n. 49 (2d Cir.1983) ("Although [plaintiff] was required to prove a 'causal connection' between its injury and [defendant's] illegal conduct, it was sufficient to demonstrate that [defendant's] conduct was a substantial or materially contributing factor."). Thus, Discover need not prove that the issuing ban was the only cause of its alleged failure to use third-party acquirers.[4]

■ With respect to Defendants' contention that the issuing bans caused no injury at all, this challenge amounts to a more general attack on Dr. Hausman for failing to account adequately for obvious alternative explanations. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F.Supp.2d 213, 238 (S.D.N.Y.2004) ("An expert must demonstrate that he has adequately accounted for obvious alternative explanations in order for his testimony to be reliable."); *cf. Ambrosini v. Labarraque*, 101 F.3d 129, 141 (D.C.Cir.1996) (explaining that the possibility of some un-eliminated causes presents a question of weight, so long as the most obvious causes have been considered and reasonably ruled out by the expert); *Royal Insurance Co. of America v. Joseph Daniel Construction, Inc.*, 208 F.Supp.2d 423, 427–28 (S.D.N.Y.2002). In his report, however, Dr. Hausman ad-

---

**4.** The Court notes that this finding is not inconsistent with its prior ruling that "the entirety of [alleged] damages stemming from the failure to engage in third-party acquiring must flow from the issuance ban, *not* the acquiring ban, which has never been found unlawful." *Discover Fin. Svs. v. Visa U.S.A., Inc.*, No. 04 Civ. 7844, 2008 WL 3884383, at *15 (S.D.N.Y. Aug. 20, 2008). Regardless of potential alternative causes, Discover still bears the ultimate burden of proving that its damages with respect to third-party acquirers flowed from the issuance bans themselves. *See* Phillip E. Areeda, *et al.*, 2A *Antitrust Law* ¶ 338a (2007) (describing burden-shifting scheme with regard to causation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 297 (2d Cir.1979) ("[P]laintiffs in an antitrust action must prove injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.") (internal quotation marks and citation omitted).

The Court cautions, however, that Discover's explanation of the difference between disaggregation of damages and causation is potentially misleading in this case. *See* Discover's Mem. at 5 ("[W]hile potential alternative causes need to be taken into account in terms of disaggregating damages, it is well-settled that a plaintiff need not disaggregate a cause that is intertwined with the illegal conduct."). To be clear, disaggregation of damages applies when an antitrust plaintiff is claiming injury caused by one or more of the defendant's *unlawful* practices. *See, e.g., MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081, 1161 (7th Cir.1983). "The disaggregation requirement is distinct from the requirement that the plaintiff's damage calculations must control for exogenous factors that also have an adverse impact on the plaintiff's economic conditions." Areeda, *et al.*, 2A *Antitrust Law* ¶ 392g. Because the CPP acquiring ban is *not* being challenged as unlawful conduct in the instant litigation, the disaggregation analogy is inapt. Instead, the CPP acquiring ban is an "exogenous factor" that must be accounted for in Discover's damage calculations, as ultimately the jury must have a reasonable basis for separating the impact of the alleged unlawful violations from other factors. *See id.* at ¶ 338a.

dressed Defendants' theory that Discover's alleged third-party acquiring damages flow from lawful causes, such as MasterCard's express acquiring ban, and not from the issuing bans themselves. Hausman Report ¶ 188–91. Dr. Hausman ultimately found this theory unpersuasive. Instead, he opined that MasterCard's express acquiring ban, and the possibility of a similar ban from Visa, had no effect upon the relevant injury. *See id.* at 1188. Dr. Hausman reasoned that the issuing bans restricted Discover's volume on the network that it would have needed to implement third-party acquiring effectively, and thus "as long as the exclusionary rules existed, third-party acquiring would not be permitted." *Id.* at ¶ 188–89.

In support of this conclusion, Dr. Hausman relied upon testimony from Defendants' senior executives and MasterCard's General Counsel, Noah Hanft, who testified that the CPP's prohibition on third-party acquiring was "consistent" with having a rule prohibiting third-party issuing. *Id.* at ¶ 188–89. Hanft testified that MasterCard management believed that the

CPP would have "no practical effect," and that the CPP acquiring prohibition was eliminated when the issuing restriction was repealed because the "business reason" for adopting it "related primarily to consistency" with the existence of the issuing prohibition.[5] Kadetsky Decl. ¶ 2, Ex. D: Dep. of Noah Hanft (May 9, 2007) at 120–22, 257. Dr. Hausman relied upon the timing of the repeal of the CPP acquiring and issuing bans in his report: "As the two restrictions served the same purpose and were interconnected, maintaining the ban on third-party acquiring after the ban on third-party issuing was rescinded made no economic sense."[6] *Id.* at ¶ 88.

In light of Dr. Hausman's account of the "obvious" alternative explanations Defendants propose, and the objective basis proffered for his opinion, the Court finds that Dr. Hausman's testimony is admissible. To the extent Defendants disagree with the conclusions Dr. Hausman reaches, their experts can testify about their contrary interpretations, and Defendants can challenge Dr. Hausman's conclusions on cross-examination.

5. Hanft's testimony is relevant for the reasons explained above. The Court also finds that the probative value of this evidence substantially outweighs the possibility for prejudice to the Defendants under Federal Rule of Evidence 403. Accordingly, MasterCard's motion *in limine* to preclude Discover from calling Hanft as a witness at trial on this ground is denied.

6. In this regard, MasterCard's voluntary repeal of the acquiring ban is relevant to the issue of damages flowing from Discover's alleged inability to engage third-party acquirers. The Court finds that the probative value of this evidence substantially outweighs the possibility for prejudice to the Defendants under Federal Rule of Evidence 403. Further, Defendants' argument that allowing evidence of the voluntary repeal would contravene the policy against admitting evidence of a "subsequent remedial measure," is meritless on the

ground that the acquiring ban was never challenged as being unlawful conduct. *See* Fed. R.Evid. 407. Defendants' objection that MasterCard's acquiring ban was repealed based on "privileged legal considerations," likewise fails. MasterCard merely speculates that it "would" have come to the decision to repeal its acquiring ban only after extensive consultation with its attorneys. Defs. Reply Mem. Supp. Mot. to Preclude Evidence Referencing MasterCard's Voluntary Repeal of the Acquiring Prohibition Component of the CPP at 3. This statement, however, is contradicted by Hanft's testimony that the CPP acquiring prohibition was eliminated because the *"business reason"* for adopting it "related primarily to consistency" with the existence of the issuing prohibition. Kadetsky Decl. ¶ 2, Ex. D, at 257 (emphasis added). Accordingly, the Court denies Defendants' motion *in limine* to preclude the fact that the CPP acquiring ban was voluntarily repealed.

### B. Dr. Hausman's Linkage of Issuing and Acquiring

Defendants also challenge Dr. Hausman's methodology in linking the issuing restrictions to Discover's decision not to approach third-party acquirers in the 1990s. Specifically, Defendants contend that Dr. Hausman (1) fails to provide affirmative support for his causation analysis; (2) fails to provide a basis to assert that banks will not acquire for Discover if they do not also issue Discover cards; (3) resorts to a logical fallacy to include third-party acquiring in his damages model; and (4) ignores contrary evidence as to why Discover did not use third-party acquirers. *See* Defs. Mem. at 2–3.

The gravamen of Defendants' arguments is that Dr. Hausman ignored objective evidence of certain banks' willingness to work with Discover on the acquiring side of the business, without the precondition that they work with Discover on the issuing side of the business. *See* Defs. Mem. at 10–11, 13–15. As to Defendants' objectivity challenge, Dr. Hausman relied not only on testimony of Discover executives, but also considered the testimony of Defendants' experts and senior executives. *See, e.g.,* Hausman Rebuttal Report ¶ 230 (responding to MasterCard expert Professor Robert Hall); Hausman Report, Attachment C (listing sources considered). Whether Dr. Hausman drew proper inferences and conclusions from these sources is certainly a question that is open to dispute. Defendants are fully able, however, to contest Dr. Hausman's statements through the testimony of their own expert witnesses and through cross-examination of Dr. Hausman.

As to Defendants' assertion that Dr. Hausman ignored evidence of bank acquir-

ers' interest in Discover, Dr. Hausman opined that "for those financial institutions [who were prominent acquirers and were also issuers,] to acquire for Discover would have been inconsistent with the issuing ban in the exclusionary rules." Hausman Report ¶ 190. Consistent with this approach, Dr. Hausman considered the fact that non-bank acquirers such as First Data Corporation ("FDC") offered to engage in third-party acquiring for Discover. *See* Hausman Rebuttal Report ¶ 235. Nevertheless, Dr. Hausman concluded that

> FDC could not have engaged in meaningful third-party acquiring for Discover without the participation of its many Alliance Banks,' which held the direct relationship with the majority of merchants for whom FDC provided processing services. These alliance banks were members of Visa and MasterCard and subject to the associations' membership rules.

*Id.* To the extent Defendants have any questions about the weight or the sufficiency of the evidence upon which Dr. Hausman relied, or the conclusions generated therefrom, those questions can be asked on cross-examination.[7] *See Trouble v. Wet Seal, Inc.,* 179 F.Supp.2d 291, 301 (S.D.N.Y.2001) ("In assessing the reliability of a proffered expert's testimony, a district court's inquiry under *Daubert* must focus, not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology."); *see also Daubert,* 509 U.S. at 595, 113 S.Ct. 2786.

Finally, as to Defendants' contention that Dr. Hausman improperly relied upon a *post hoc ergo propter hoc* fallacy—in other words, a before-and-after reasoning,

---

7. Moreover, the Court notes that the possibility of some un-eliminated causes does not render Dr. Hausman's testimony unreliable. *See Astra Aktiebolag v. Andrx Pharm., Inc.,* 222 F.Supp.2d 423, 488 (S.D.N.Y.2002). Defendants are free to persuade the jury at trial that their explanation of Discover's inability to use third-party acquirers is equally or more likely.

*see* Defs. Mem. at 13—the Court finds that Dr. Hausman's economic analysis forms a sufficiently reliable basis for his opinion. Thus, Dr. Hausman's testimony is admissible. *See Rolen v. Hansen Beverage Co.,* 193 Fed.Appx. 468, 473 (6th Cir.2006) ("Expert opinions based upon *nothing more than* the logical fallacy of *post hoc ergo propter hoc* typically do not pass muster under Daubert.") (emphasis added).

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude testimony by Dr. Hausman is DENIED. The following motions *in limine* are also DENIED: Master-Card's motion to preclude evidence that any MasterCard member between June 1996 and October 2004 was unwilling to do third-party acquiring for Discover due to the CPP's issuing ban; MasterCard's motion to preclude the introduction of evidence regarding its voluntary repeal of the CPP's acquiring ban; and MasterCard's motion to preclude Discover from calling Noah Hanft as a witness at trial.

**SO ORDERED.**